IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                         Case No. 22-cr-841 KG

STEVEN E. ASTORGA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Steven Astorga's Motion to Suppress. (Doc. 22). The Motion is fully and timely briefed. (Docs. 26, 28). The Court held an evidentiary hearing on August 25, 2022. Assistant United States Attorneys Maria Armijo and Joni Autrey Stahl represented the United States. Mr. Astorga was present and represented by Assistant Federal Public Defender Bernadette Sedillo. The Court heard testimony from Las Cruces Police Officer Jackson Brown. The Court also received as evidence lapel camera video, (Ex. 1), and a birds-eye image of the apartment complex that was marked to show the location of the apartment and the encounter between Mr. Astorga and Officer Brown, (Ex. 2).

Having considered the briefing, the evidence, the testimony, and the relevant law, the Court concludes that Mr. Astorga was temporarily seized and later arrested but suffered no unreasonable search or seizure in violation of his Fourth Amendment rights. Accordingly, the Court denies the Motion.

I.    *Standard of Review*

When evaluating the evidence on a motion to suppress, the "district court must assess the credibility of witnesses and determine the weight to give to the evidence presented" and "the

1

inferences the district court draws from that evidence and testimony are entirely within its discretion." *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020) (holding the court must not view the evidence in the light most favorable to the government); *see also United States v. Torres*, 987 F.3d 893, 899 (10th Cir. 2021) (explaining the court "evenhandedly" considers the evidence). The burden of proof is by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974). That burden is borne first by the movant to show a violation of a constitutional right, then by the government to show its behavior reasonable or that consent was validly given. *Goebel*, 959 F.3d at 1265; *United States v. Shrum*, 908 F.3d 1219, 1229 (10th Cir. 2018); *United States v. Ringold*, 335 F.3d 1168, 1171 (10th Cir. 2003).

II.     *Findings of Fact*

As an initial matter, the Court found Officer Jackson Brown's testimony reliable and credible, and determines that his lapel video corroborates his testimony. The Court also notes that the parties largely agree on what occurred factually but disagree on the legal significance of those facts.

The Court finds that on December 18, 2021, at approximately 4:00 a.m., the Mesilla Valley Regional Dispatch Authority received a call which it relayed to Officer Brown. The caller reported that a man wearing a red hoodie and red jacket had knocked on her sister's apartment door and turned the doorknob, in an apparent attempt to enter. The caller stated that the man had walked away to hide by a fence at the apartment complex and was carrying something large, which appeared to be a gun. Officer Brown asked dispatch if the man had threatened anyone with the weapon and learned there was no report to that affect. Officer Brown knew the reporting party declined to identify themselves but that they called from within the apartment complex and that they requested the officer on scene call them back.

2

Within minutes—at 4:08 a.m., according to the timestamp on the lapel camera video—Officer Brown arrived on scene knowing the description of the man, the allegation of an attempted breaking and entering or burglary, and the assertion that he was armed. At 4:00 a.m. in December, the morning was still dark. Officer Brown, by his six years of experience, knew the particular apartment complex to be a high crime area—he had responded to gun shots, drug crimes, and domestic disturbances multiple times.

Upon turning off Solano Drive onto Oasis Avenue, Officer Brown identified a man matching the caller's description and carrying a skateboard. The man was walking west down the sidewalk along the southern edge of the apartment complex. Officer Brown saw no one else about. Officer Brown, who was driving east, towards the suspect, pulled his marked police car over on his side of the road, then walked across the street towards, and in front of, the suspect. Officer Brown wore his uniform. He was on duty alone.

The suspect stopped walking when Officer Brown approached him from the front. Officer Brown asked him to take his hands out of his pockets, and he complied. Officer Brown asked where he was coming from, and the suspect answered that he just left a friend's apartment, but he did not know the number. Officer Brown testified that while he did not say it out loud, he considered the suspect not free to leave at that time.

Concerned that the suspect had baggy clothing capable of concealing a weapon, Officer Brown announced he would pat down the suspect. The suspect immediately said "ah f***"[1] and fled on foot, running back east along Oasis Avenue and north into the apartment complex.

---

[1] At the hearing, there was some disagreement about what Mr. Astorga exclaimed. This finding is based on the Court's hearing of the lapel camera video. Either way, the specific words are not nearly as important as the fact of Mr. Astorga's reaction to the announced pat down.

Officer Brown pursued on foot, subdued the suspect with his taser, handcuffed him, and searched his clothing. The search revealed a flare gun and a loaded Smith and Wesson pistol.

By that point, Officer Brown identified the suspect as Defendant Steven Astorga and ran his name, finding he had an outstanding warrant. Officer Brown arrested and booked Mr. Astorga on the warrant and for resisting and evading arrest. After the arrest, Officer Brown made a follow-up phone call to the original caller, and at that time identified the caller by name.[2]

Mr. Astorga now faces a single felon-in-possession charge in this Court. Relative to that charge, he challenges the initial seizure, the announced pat down, and the eventual arrest and search as violative of the Fourth Amendment and asks that the gun evidence be suppressed.

III.   *Conclusions of Law*

The parties' raise four issues: (1) whether Mr. Astorga was seized in the first place when Officer Brown spoke to him on the sidewalk; (2) if so, whether that brief *Terry* stop was supported by reasonable suspicion; (3) whether the announced pat down was justified by a reasonable fear for the officer's safety; and (4) whether the eventual arrest and search which discovered the gun was reasonable. The Court addresses each in turn.

A.   *Officer Brown Seized Mr. Astorga When He Stopped Him for Questioning*

Brief stops, short of a formal arrest, may yet be seizures for Fourth Amendment purposes. *See Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.");

---

[2] Mr. Astorga, in the briefing, (Doc. 28) at 1–2, argues that Officer Brown's *ex post facto* identification of the original caller undermines the existence of reasonable suspicion at the time of the first seizure. Given Officer Brown's testimony about what was relayed to him from dispatch, the Government argues the later phone call is irrelevant. The Court agrees the call is not relevant to the Fourth Amendment analysis, and to the extent it may be relevant, it is not material.

*United States v. Briggs*, 720 F.3d 1281, 1284 (10th Cir. 2013) ("An investigative, non-consensual detention constitutes a seizure under the Fourth Amendment.") (citations omitted).

In certain cases, like this one, it can be necessary to define exactly when a seizure begins. A seizure can occur by physical force or by a show of authority. *E.g.*, *Torres v. Madrid*, 141 S.Ct. 989, 995 (2021). Where no physical force is involved, a seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement. *Id.* at 1001. To accomplish a show-of-authority seizure in the *Terry* stop context, the *Mendenhall* test applies: "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *also Fla. v. Bostick*, 501 U.S. 429, 435 (1991) ("When police attempt to question a person who is walking down the street or through an airport lobby, it makes sense to inquire whether a reasonable person would feel free to continue walking.").

The *Mendenhall* test illuminates the distinction between consent and submission. If a person would feel free to leave and yet stops to talk to the police, then the interaction is consensual and is not a seizure which intrudes upon a constitutional right. *E.g.*, *Mendenhall*, 446 U.S. at 554–555. If a person would not feel free to leave, however, then their talking to police is a submission to authority, and the stop is a non-consensual seizure. *E.g.*, *California v. Hodari D.*, 499 U.S. 621, 627–628 (1991).

Turning to this case, the Court concludes that a reasonable person in Mr. Astorga's position would not have felt free to leave. Officer Brown parked his marked cruiser near Mr. Astorga and approached Mr. Astorga wearing his uniform. Officer Brown approached from the front, thus preventing Mr. Astorga from continuing freely. Officer Brown asked Mr. Astorga to

keep his hands visible in what was more akin to a command than an optional request. *See Mendenhall*, 446 U.S. at 554 (explaining one indication of a seizure is "the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). Moreover, Officer Brown testified that he considered Mr. Astorga not free to leave.

The Court also determines that Mr. Astorga submitted to Officer Brown's show of authority. When approached, Mr. Astorga stopped. When asked to take his hands out of his pockets, he complied. When posed questions, he answered, even if somewhat vague in his responses. In the briefing, Mr. Astorga asserts he did not consent to the stop, (Doc. 22) at 3, and the Government did not dispute that assertion. Mr. Astorga's actions, if not consent, are a submission to authority. For these reasons, the Court concludes this was a seizure.

The Government asserts that a seizure did not occur until Officer Brown arrested Mr. Astorga, arguing that because Mr. Astorga fled, he never manifested submission to the Officer's authority. (Doc. 26) at 5. The Court already described its reasoning in declining to adopt that view, and it notes additionally here that seizures are not permanent. *See Hodari D.*, 499 U.S. at 625 ("A seizure is a single act, and not a continuous fact." (quoting *Thompson v. Whitman*, 18 Wall. 457, 471, 21 L.Ed. 897 (1874))). That is to say that a seizure can be accomplished and then broken. From this view, fleeing is less a failure to submit and more an escape from a seizure. Accordingly, despite Mr. Astorga's flight, the Court concludes he was briefly seized.

B. *Officer Brown's Brief Seizure of Mr. Astorga Was Reasonable*

The Fourth Amendment does not prohibit all warrantless searches and seizures, but only those that are unreasonable. *E.g.*, *Elkins v. United States*, 364 U.S. 206, 222 (1960). The Court determines that Office Brown's brief seizure of Mr. Astorga was reasonable and therefore not violative of Mr. Astorga's constitutional rights.

6

"An officer may constitutionally stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot[.]" *United States v. Briggs*, 720 F.3d 1281, 1284-85 (10th Cir. 2013) (citations omitted). "An investigative detention is based on reasonable suspicion if the detaining officer has a particularized and objective basis for suspecting the person stopped of criminal activity." *Id.*

Here, Officer Brown had the following bases for suspecting criminal activity: (1) a call asserting not only possession of a weapon, but an attempted burglary; (2) the pre-dawn early morning hour; (3) his knowledge of a high crime area; (4) the fact that Mr. Astorga matched the caller's description and appeared to be the only person awake and about; and (5) Mr. Astorga's proximity to the apartment location. The Court concludes these facts constitute a sufficient particularized and objective basis for suspecting criminal activity justifying a brief investigative stop.

Mr. Astorga argues that the anonymity of the original call is dispositive, relying on *Florida v. J.L.*, 529 U.S. 266 (2000). (Doc. 22) at 4–5. The facts and holding of that case, however, are distinguishable. In *J.L.*, the Supreme Court held an anonymous tip that a young man was carrying a concealed gun, *without any more information*, was insufficient to justify a *Terry* stop and frisk even though the person was described accurately, and police were able to identify him reliably. 529 U.S. at 271. In this case, there is more than a mere allegation of gun possession; the caller asserted an attempted break-in—a significant departure from the facts of *J.L.* And the call in this case has a greater indicium of reliability than in *J.L.* because rather than just an anonymous "tip," the call in this case was a person living nearby who was calling for help

7

based on their fear and their own contemporaneous perception that a man was carrying a gun and trying to break in.

Moreover, *J.L.* does not stand for the proposition that all anonymous calls fail to justify a *Terry* stop. Rather, the watchword is reliability. "The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.*, 529 U.S. at 272. The Court indeed qualified its holding in that case by declaring that "however, there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.* at 270.

The case before the Court is more closely analogized to *United States v. Mosley*, a case in which the Tenth Circuit demonstrated its willingness to give anonymous calls latitude even under the *Florida v. J.L.* framework. 743 F.3d 1317 (10th Cir. 2014). In *Mosley*, police received an anonymous call that two Black men were handling a gun while sitting in a black Ford Focus in a Denny's parking lot at about 3:00 a.m. *Id.* at 1321. Officers identified the vehicle and approached it when the passenger "quickly began making furtive motions with his right shoulder and arm that officers testified were consistent with trying to either hide or retrieve a weapon." *Id.* Eventually, police arrested the two men and found a gun under the seat of the car. *Id.*

When the seizure was challenged based on *Florida v. J.L.*'s restriction on the use of anonymous calls, the Tenth Circuit concluded that *J.L.* was inapposite. *Id.* at 1328. The Court reasoned that despite the anonymous tip, the police had reasonable suspicion the defendant "either was or had been engaged in criminal activity" because (1) the call was at 3:00 a.m., (2) the police knew shootings and other "situations" had "gone down" in that Denny's parking lot over the years, and (3) the men made furtive motions as if hiding a gun. *Id.*

8

In our case, there were no "furtive motions." But there was an allegation that Mr. Astorga was trying to break into an apartment. Like *Mosley*, the time was in the very early morning hours and the location was a high-crime area. For these reasons, the anonymous call does not undermine the existence of reasonable suspicion.

### C. *Officer Brown's Attempted Pat Down was Justified If Not Irrelevant*

During the "course of a valid investigative detention, an officer may conduct a limited protective search ('frisk') if the officer harbors an articulable and reasonable suspicion that the person is armed and dangerous." *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993). In this case, Officer Brown had received an allegation that Mr. Astorga was armed and had attempted a burglary. When he encountered Mr. Astorga, he found him wearing baggy clothes which he considered capable of concealing a weapon. Furthermore, Officer Brown was alone, at night, in a known high-crime area, and he testified that he worried for his safety. The Court concludes that fear was reasonable in the circumstances and so was the announced pat down.

The Government argues that even if Officer Brown did not have a reasonable suspicion that Mr. Astorga was armed, the fact that Mr. Astorga fled before being searched makes the analysis unnecessary, and the Court agrees. (Doc. 26) at 6. In *United States v. Sanchez*, the Tenth Circuit reasoned that a suspect who fled before a pat down was conducted rendered his challenge of the never-conducted pat down moot. 13 F.4th 1063 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 842 (2022). "Because the officer had not yet begun a pat down search ... there is no need for the Court to consider whether the officers had reasonable suspicion to believe [the defendant] was armed and dangerous." *Id.* at 1072. Applying that principle here, the never-conducted pat down is irrelevant to the Fourth Amendment analysis.

Whether because Officer Brown had a reasonable belief that Mr. Astorga was armed or because the issue was mooted by Mr. Astorga's flight, the announced pat down did not violate the Fourth Amendment.

D.  *Once Mr. Astorga Fled, Officer Brown Had Probable Cause to Arrest Him*

When Mr. Astorga fled on foot, the nature of the interaction changed. At that point, Mr. Astorga was in violation of NMSA § 30-22-1(B), which makes it a crime to resist, evade, or obstruct an officer. Specifically, "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing… has knowledge that the officer is attempting to apprehend or arrest him" is considered a violation. Section 30-22-1(B). New Mexico courts find that the word "apprehend" includes a situation like the instant case in which an officer is attempting to briefly detain a person for questioning based on reasonable suspicion. *See, e.g., State v. Gutierrez*, 2007-NMSC-033. And the Tenth Circuit has agreed that where officers have reasonable suspicion *prior* to a suspect's flight, fleeing in violation of § 30-22-1(B) constitutes probable cause to arrest and search the suspect. *Sanchez*, 13 F.4th at 1073 (fully cited on preceding page).

Here, Officer Brown had reasonable suspicion that Mr. Astorga was engaged in criminal activity prior to his flight. And Mr. Astorga fled after being told of the pat-down search, indicating he knew Officer Brown intended to "apprehend" him. As in *Sanchez*, reasonable suspicion combined with Officer Brown's awareness of Mr. Astorga's knowledge provided probable cause to arrest and search Mr. Astorga for fleeing.

At oral argument, Mr. Astorga relied on *United States v. Romero*, to urge this Court to consider that Officer Brown did not have justification to pursue or arrest Mr. Astorga. 935 F.3d 1124 (10th Cir. 2019). On the facts of this case, the Court is not inclined to agree.

*Romero* stands for two relevant propositions: (1) failure to follow one command out of many does not amount to obstruction justifying arrest under § 30-22-1(B), and (2) an arrest cannot be based on an unreasonable mistake of law. *Id.* at 1130, 1131–1132. Neither of those propositions apply here. First, Mr. Astorga did not merely fail to follow a single command; he actually fled to avoid a pat-down search, in violation of § 30-22-1(B). Second, Officer Brown's attempt to pat down Mr. Astorga was based on a reasonable belief he was armed and was therefore not on an unreasonable mistake of law. The Court concludes this case is closer to *Sanchez* than to *Romero*, and that Officer Brown had probable cause to arrest Mr. Astorga and search him incident to that arrest.

IV. *Conclusion*

The Court concludes that Mr. Astorga was twice seized—first, briefly, on the sidewalk, and second, when arrested. Both seizures, however, were reasonable under the law. The interrogative stop was justified by reasonable suspicion and the arrest was supported by probable cause. Mr. Astorga suffered no violation of the Fourth Amendment. Accordingly, the Court denies his Motion to Suppress.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE